CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED
2011 NOV 16 PM 2:13
DEPUTY CLERK _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| EVA DIGMAN and RED CANYON TRANSPORT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BRIAN CUMMINGS, individually and in his representative capacity with TRANSWEST CAPITAL, INC. and TRANSWEST CAPITAL, INC, <br><br> Defendant, | NO. 2:11-CV-91-J |

## MEMORANDUM OPINION

Before the Court is Defendant Brian Cumming's *Motion to Dismiss for Lack of Personal Jurisdiction* and Defendants' *Motion to Dismiss for Improper Venue or in the Alternative, Motion to Transfer Case out of District*. Plaintiffs Eva Digman and Red Canyon filed suit against Defendant Brian Cummings and Transwest Capital, Inc ("Transwest") for tortious interference with a contract and business disparagement. Transwest is a California corporation. Defendant Cummings is a manager at Transwest and also a resident of California.

Plaintiff Eva Digman is an Amarillo resident. She is an employee and owner of Red Canyon Transport, LLC ("Red Canyon")—a Texas company located in Amarillo, Texas.

Defendants assert that on January 27, Dan Digman, an employee and owner of the trucking company Cashless Concepts d/b/a Rental Transport Services ("Rental Transport") and husband to Plaintiff Eva Digman, sent invoices to Transwest, which was Rental Transport's

1

factoring service. Factoring is a common financial service in the trucking industry where the factoring company purchases invoices from the trucking company in exchange for an advance on the value of the invoice. The factoring company advances a portion of the price of the invoice to the trucking company and remits the remainder, minus fees, once the trucking company's client pays the full amount of the invoice directly to the factoring company. This arrangement allows the trucking company to maintain a continual cash flow for its business.

The January 27 invoices were allegedly for services Rental Transport provided to United Rentals, a client of Rental Transport. Defendant Transwest asserts it paid the advance on the invoices to Rental Transport, but United Rentals refused to pay the price of the invoices and told Transwest the invoices were fraudulent according to Schenker Logistics, a company that verifies payments for United Rentals. Mr. Cummings communicated with a number of United Rentals employees while attempting to recover the price of the allegedly fraudulent invoices purchased from Rental Transport. He avers he communicated with three employees of United Rentals during this time: Robert McEntire of Modesto, California; Eric Andresen of North Carolina; and James McMenemy of New York City. Transwest claims it never collected on the invoices.

At some point during this back and forth Defendant Cummings discovered TransAm—a rival factoring competitor whose principle place of business is in Kansas—had a security interest attached to Red Canyon. Cummings alleges he contacted TransAm employees John Goode and D.J. Crocker, who are residents of Kansas, to discuss the invoices Transwest received from Mr. Digman and TransAm's past experience dealing with Mr. Digman. Mr. Cummings avers that during these conversations he only asked if TransAm had experienced similar problems regarding fraudulent invoices from Mr. Digman and Rental Transport. He denies accusing Plaintiffs of submitting fraudulent invoices. In an e-mail submitted by the Plaintiffs written by

2

Brian Cummings and sent to Dan Digman, Defendant Cummings writes that he had been in contact with TransAm:

> I have also notified our friends at Transam (sic) about your dealings and put them in touch with UR and Schenker. You think that they are going to let any company associated with you move freight for them? Red Canyon is done too.

Following Mr. Cumming's conversation with TransAm, TransAm stopped accepting invoices from Red Canyon. Plaintiffs allege the reason for TransAm's refusal to accept invoices from Red Canyon was because Defendant Cummings told TransAm all of Red Canyon's invoices were fraudulent and that Dan Digman was associated with Red Canyon. Eva Digman avers that she repeatedly called and e-mailed Defendant Cummings and asked him, with no result, to stop accusing Red Canyon of submitting fraudulent invoices. Because of TransAm's refusal to accept invoices from Red Canyon, cash flow temporarily ceased for Red Canyon and it was forced to find a replacement factoring service that would accept its invoices. Plaintiffs allege Cummings also contacted this factoring service, Gulf Coast Bank and Trust ("Gulf Coast"), and again disparaged Red Canyon's billing practices. Red Canyon's new factoring service would not accept invoices from Red Canyon received from United Rentals.

Eva Digman and Red Canyon accuse Mr. Cummings, in his individual capacity, as well as Transwest, Inc. as employers of Mr. Cummings, of tortious interference with a contract and business disparagement. Defendant Cummings denies ever claiming Red Canyon submitted false invoices when he contacted TransAm about Mr. Digman's allegedly fraudulent invoices as an employee of Rental Transport.

Defendant Cummings argues this Court lacks personal jurisdiction over him. Plaintiff alleges the Court has both general and specific jurisdiction over Defendant Cummings. Defendant Transwest has not challenged the Court's jurisdiction over it.

Defendants Cummings and Transwest also argue this suit should be dismissed for improper venue or, in the alternative, that this Court transfer the suit to the the Eastern District of California, Fresno Division.  They argue venue is proper there as both Defendants reside in California, there are insufficient contacts with this District and the events related to this suit, and that this Court's lack of jurisdiction over one of the Defendants necessitates transfer.  Plaintiffs argue venue is proper under § 1391(a)(2) and the suit should not be transferred.

*Standard for Personal Jurisdiction*

"When a non resident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  On a motion to dismiss for lack of jurisdiction without an evidentiary hearing, uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor when determining whether a *prima facie* case for personal jurisdiction exists. *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000) (citing *Felch v. Transportes Lar-Mex SA De CV*, 92 F.3d 320, 326 (5th Cir. 1996)).  A *prima facie* showing may be established by the pleadings, depositions, affidavits, or exhibits of record. See *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999).  "'[E]ach defendant's contacts with the forum state must be assessed individually.'" *See Willow Bend, L.L.C. v. Downtown ABQ Partners, L.L.C.*, 612 F.3d 390 (5th Cir. 2010).

"A federal court sitting in diversity must satisfy two requirements to exercise personal jurisdiction over a nonresident defendant.  First, the forum state's long-arm jurisdiction statute must confer personal jurisdiction.  Second, the exercise of jurisdiction must not exceed the

4

boundaries of the Due Process Clause of the Fourteenth Amendment." *Mink v. AAAA Dev. LLC*, 189 F.3d 335 (5th Cir. 1999)(citations omitted). Courts have established Texas' long-arm jurisdiction statute extends to the limits of Due Process. *See* 2 Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (West 1997); *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992).

The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantive justice.' *See Intl' Shoe Co. v. Washington*, 326 U.S. 310 (1945). "Minimum contacts" with a forum state may be established through specific or general jurisdiction." *See Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987). Specific jurisdiction may be established in a forum if: The (1) defendant has purposefully directed his activities toward the forum state or purposefully availed himself of the privileges of conducting activities there; (2) the controversy arose out of or is related to the defendant's conduct with the forum state; (3) the exercise of personal jurisdiction is fair and reasonable. *See Jackson v. Tangfoglio Guiseppe, S.R.L.*, 615 F.3d 579 (5th Cir. 2010). The contacts must be more than "random, fortuitous or attenuated" in relation to the cause of action. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

A court may exercise general jurisdiction, even if the suit does not arise out of contacts with the forum state, if the defendant has maintained "continuous and systematic" contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

*Contacts to Establish General Jurisdiction*

Plaintiffs argue this Court has general jurisdiction over Mr. Cummings because his contacts as an employee of Transwest are 'systematic.' They allege that he made routine sales and collected money from a business owned by Dan Digman, Plaintiff's husband, and that Transwest's five business relationships in Texas are sufficient to create general jurisdiction over Cummings. Defendant acknowledges he services five accounts located in Texas as an employee of Transwest.

"The continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). In *Helicopteros Nacionales,* for example, the Supreme Court found the State of Texas lacked general jurisdiction over a foreign company even though the company purchased helicopters from a Texas based company and sent its employees to Texas for training. The Court stated, "[P]urchases and related trips, standing alone, are not a sufficient basis for a state's assertion of jurisdiction." *Helicopteros* at 417; *see also Johnston*, F.3d 602 at 614 (finding a district court erred in holding it had general jurisdiction over a defendant who sold approximately $140,000 worth of goods and services in Texas, and who intermittently sent employees to Texas to service equipment and attend conventions).

According to the record, Defendant Cumming's business relationships with Texas were limited to a total of five accounts that he serviced as an employee of Transwest. Plaintiffs argue these contacts, and Cummings' exchange of money with Dan Digman in his capacity as an employee of Transwest, are sufficient to establish general jurisdiction.

Defendant Cummings argues these contacts with the forum state should not be attributed to him for the purpose of establishing personal jurisdiction because of the fiduciary shield doctrine. Under the fiduciary shield doctrine, "an individual's transaction of business within the

6

state solely as a corporate officer does not create personal jurisdiction over that individual though the state has *in personam* jurisdiction over the corporation[.]" *Stuart*, 772 F.2d at 1197. The rule is inapplicable to "corporate officers who, in their role as corporate agents, injure persons by virtue of their "tortious activity even if such acts were performed within the scope of their employment as corporate officers." *Id*. He also argues that, even if the other contacts were attributable to him, they still are not sufficient enough to establish general jurisdiction over him. Plaintiffs have not accused Defendant Cummings of tortious conduct in relation to any of his Texas business accounts. As a result, they cannot be attributed to him for purposes of establishing general jurisdiction under the fiduciary shield doctrine.

The Court agrees that Brian Cummings' intermittent contacts with five Transwest accounts are not sufficient to establish his contacts were "continuous and systematic" to the extent necessary to establish general jurisdiction.

*Specific Jurisdiction*

Plaintiffs' business disparagement claim and tortious interference claim are based on Defendant's alleged communications with 1) TransAm and 2) Gulf Coast. Plaintiffs argue that jurisdiction is proper over Cummings because he intended his remarks to harm Red Canyon and because he made threatening statements about Red Canyon to Dan Digman, who is located in Texas. Plaintiff Eva Digman asserts in affidavit:

> [I] learned that Mr. Cummings had spoken to my business contacts and told them of his experiences with Mr. Digman while in the same conversation specifically referencing Red Canyon and that Mr. Digman was somehow connected with Red Canyon. I immediately emailed and called Mr. Cummings and asked him to stop discussing Red Canyon's billing practices with third parties, especially since he had no prior contact with Red Canyon. I explained to Mr. Cummings that Mr. Digman did not have any influence over Red Canyon's billing practices. However, Mr. Cummings seemed determined to assert that somehow his

> experiences with another trucking company gave him the right to call my business partners and intimate that Red Canyon's billing practices were questionable.

Plaintiff also attaches as an exhibit an alleged e-mail from Defendant Cummings directed to Dan Digman stating that "Red Canyon is done too." Plaintiffs argue this was intended as a threat to ruin Plaintiffs' business in retaliation for Dan Digman allegedly submitting $242,689.27 of fraudulent invoices to Transwest. Taken with the subsequent secession of business relations with TransAm following communications with Cummings and Gulf Coasts's acknowledgment of allegations of fraud in their factoring agreement with Red Canyon, Plaintiffs argue these facts show *prima facie* that Cumming's contacts were sufficiently directed at Texas to establish specific jurisdiction.

### *Defendant's Contacts with the Forum*

"When a nonresident defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities," the defendant's contacts are sufficient to support the exercise of specific jurisdiction over that defendant." *Central Freight Lines Inc, v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003)(citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). In *Central Freight Lines Inc.*, the Fifth Circuit found a Texas court had specific jurisdiction over a plaintiff's claims against a defendant for tortious interference of a business relationship even though the defendant's tortious conduct occurred in New Jersey. The Court determined that it was not unreasonable for the defendant to expect to be haled into a Texas court when the relationship the defendant interfered with was between two Texas corporations whose business dealings were located in Texas, the defendant was doing business with the Texas plaintiff because the plaintiff's location was "strategically advantageous to the defendant," and the defendant had a

long-term business agreement with the plaintiff. *See Cent. Freight.*, 322 F.3d at 382. The Fifth Circuit concluded the finding of specific jurisdiction over the defendant was proper because the "intended and foreseeable result" of the defendant's contacts leading to the cause of action was to create economic activity within Texas. *Id.*

In *Panda Brandywine Corp v. Potomac Elec. Power Co.*, 253 F.3d 865, 870 (5th Cir. 2001), however, the Fifth Circuit found a Texas district court had no specific jurisdiction for a suit brought by a Texas company against a Maryland company for tortious interference of a business relationship. Plaintiff sued defendant when defendant divested itself from a number of business agreements with the plaintiff. Defendant's actions, plaintiff argued, interfered with financial arrangements it had procured because of its agreements with the defendant.

In finding there was no specific jurisdiction for the Texas court to hear the claim, the Fifth Circuit agreed with the lower court's ruling that the only contact defendant had with Texas was a contractual agreement between the two parties, which neither referenced Texas law nor contained a choice-of-law provision specific to Texas, and found the fact plaintiff happened to reside in Texas "merely fortuitous" in relation to defendant's activities. *Id.* at 867.

In this case the Defendant's conduct that gave rise to Plaintiffs' cause of action was directed at two companies outside of Texas with which Plaintiffs had business relationships. Plaintiff had no business relationship with Defendant. No facts are presented that Plaintiffs' location in Texas was important to Defendant's activities. Plaintiffs' point to a number of contacts between Dan Digman and Brian Cummings, but Dan Digman is not a party to the suit and Plaintiffs' claims do not arise from Mr. Cumming's communications with Mr. Digman. These purposeful contacts with the forum are too attenuated with the cause of action to find specific jurisdiction.

Plaintiffs also argue the cumulative effects of Cumming's out-of-state contacts with other individuals outside the state had a "trickledown" effect into Texas that proves *prima facie* Defendant Cummings purposefully directed his conduct towards Texas. They again present the same e-mails Cummings sent to Dan Digman as well as an affidavit by Eva Digman stating that she contacted Mr. Cummings and asked him to stop discussing Red Canyon's billing practices with third-parties.

When analyzing whether allegedly intentional tortious conduct that occurs out-of-state is sufficient to establish specific jurisdiction, the Fifth Circuit asks whether the forum state was the "focal point" of the conduct. *See Clemens v. McNamee*, 615 F.3d 374 (5th Cir. 2010); *accord Panda Brandywine Corp.* at 870. In *Clemens,* the Fifth Circuit agreed with a federal district court located in Texas that the lower court had no jurisdiction over a defamation suit against the defendant for out-of-state remarks about the plaintiff. In affirming the district court's opinion, the Court found the defendant's statements, while about the plaintiff, were not sufficiently "aimed at or directed" towards the forum state. *Id.* at 378. The Court found it important that the defendant's allegedly defamatory statements "did not concern activity in Texas; nor were they made in Texas or directed to Texas residents any more than residents of any state." *Id.* at 378.

Plaintiffs have failed to show Defendant's out-of-state comments, even if they were disparaging, were directed to Texas residents, were made in Texas, or focused on activities in Texas. Cumming's allegedly disparaging comments were about how Red Canyon submits fraudulent invoices to factoring companies all located outside the state of Texas. Although Defendant Cummings did have knowledge Plaintiffs were located in Texas, more than knowledge that a defendant's conduct could foreseeably injure a plaintiff in a location is needed to establish a defendant's actions were sufficiently focused on the forum to establish specific

jurisdiction. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d at 870 ("Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum."); *See also Wien Air Alaska Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999)( "The foreseeable effects of a tort 'are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum.'")(internal citation omitted).

Plaintiffs do not establish Cumming's actions were directed at Texas for the purposes of establishing specific jurisdiction over him.

### Venue

Defendants also ask that this Court either dismisses this suit for improper venue, or transfer the case to the Eastern District of California, Fresno Division.

Defendants allege all Defendants reside in the Eastern District of California and so venue is proper there under 28 U.S.C. § 1391(a)(1). Defendants also argue that venue is improper in this district under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions that gave rise to Plaintiffs' suit did not occur here. Plaintiffs dispute that venue is improper.

*Standard for Proper Venue*

Absent specific venue statutes for certain causes of action, venue is proper in a district where jurisdiction is founded in diversity when: (1) it is a judicial district where any defendant resides, if all defendants reside in the same state; (2) it is a district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated; or (3) it is a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. *See* 28 U.S.C. § 1391(a)(1)-(3).

Proper venue under 28 U.S.C. § 1391(a)(2) is not necessarily the location where most of the events of a suit took place, but it must be a substantial part. *See McClintock v. School Bd. East Feliciana Parish*, 299 Fed.Appx. 363, 365(5th Cir. 2008).

If venue is found to be improper under § 1391, the Court may dismiss the suit or, in the interests of justice, transfer the suit to an appropriate forum pursuant to 28 U.S.C. § 1406(a).

*Transfer under 28 U.S.C. 1404(a)*

Clearly the Eastern District of California, Fresno Division, would be an appropriate venue for this suit under § 1391(a)(1). All Defendants reside within that district.

Plaintiffs argue, however, that a sufficient portion of the events occurred in Amarillo to sustain venue in this District. Plaintiff Eva Digman and non-party witness Dan Digman reside here. Plaintiffs allege that potential witnesses from United Rentals removed cargo from Red Canyon trucks. They also argue that, as Amarillo residents, they suffered injury in this district.

Plaintiffs also argue that the e-mail was sent to Dan Digman in Amarillo. Defendants do not dispute this e-mail but argue the e-mail is irrelevant to the cause of action.

Even if arguably venue is proper in a given district a defendant may request transfer under 28 U.S.C. § 1404(a) to another venue for the convenience of parties and witnesses or in the interest of justice. 28 U.S.C. § 1404(a); *see Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518, 523 (5th Cir. 2001). Defendants who seek transfer under § 1404(a) must show good cause. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). Good cause means a moving party, "[M]ust satisfy the statutory requirements and clearly demonstrate that a transfer" is for the convenience of parties and witnesses, or in the interest of justice." *In Re Volkwagen II*, 545 F.3d 304, 314 (5th Cir. 2008)(quoting language from 28 U.S.C. § 1404(a)).

"Convenience" is determined by examining "a number of private and public interest factors, none of which are given dispositive weight." *Action Indus., Inc. v. U.S. Fidelity & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private concerns that the Court considers include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial of a case easy, expeditious, and inexpensive." *Id.* (citing *Syndicate 420 at Lloyd's London v Early Am. Ins. Co.*, 796 F.2d 821, 831 (5th Cir. 1986)). The public concerns include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having matters decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* (citing *Syndicate 420 at Lloyd's London* at 831).

In this case, the availability of evidence weighs in favor of transfer to California. No person who has knowledge of the allegedly disparaging conversations resides in or is amenable to subpoena in the Amarillo Division of the Northern District of Texas. The telephone calls in question originated in California, and Brian Cummings and a nonparty witness, Robert McIntyre of United Rentals, are both located within the Eastern District of California. Other nonparty witnesses who have direct information concerning allegedly disparaging conversations are in various other states and all outside the subpoena range of both this Court and the California court. There is no assertion that any of them are willing witnesses.

Further, keeping this case in the Amarillo Division after dismissal of Plaintiff's complaint for lack of jurisdiction raises the likelihood of duplicative litigation. Duplicative litigation is highly disfavored and one of the problems 28 U.S.C. § 1404(a) was created to prevent. *See*

13

*Ferens v. John Deere Company,* 494 U.S. 516, 531 (1990) ("[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different district courts leads to a wastefulness of time, energy and money that § 1404(a) was designed to prevent.")(quoting *Continental Grain Co. v. Barge FBL-585,* 354 U.S. 19, 27 (1960)).  Transfer of a case is appropriate to remove an "'obstacle [to] ... an expeditious and orderly adjudication' on the merits [of a case]." *Phillips v. Illinois Cent. Gulf R.R.*, 874 F.2d 984, 987 (5th Cir. 1989); *Aquacate Consol. Mines, Inc. v. Deeprock, Inc.,* 566 F.2d 523 (5th Cir. 1978).  Both Cummings and Defendant Transwest reside in the Eastern District of California, Fresno Division.  That Court would have jurisdiction over both.  There is no dispute venue would be proper there.

*Conclusion*

The Court finds that because of the lack of jurisdiction over Defendant Cummings in this forum and the greater availability of sources of proof in California, this suit should be transferred to the Eastern District of California, Fresno Division pursuant to 28 U.S.C. § 1404(a).

IT IS SO ORDERED.

Signed this the 16th day of November 2011.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE

14